2014 COA 34

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Gregory Lynn TRAMMELL, Defendant–Appellant.**

**Court of Appeals No. 11CA1806**

Colorado Court of Appeals, Div. III.

Announced March 27, 2014

946

Weld County District Court No. 09CR2187, Honorable Julie C. Hoskins, Judge

John W. Suthers, Attorney General, William G. Kozeliski, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Joseph P. Hough, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE TERRY

¶ 1 Defendant, Gregory Lynn Trammell, appeals the judgment of conviction entered on a jury verdict finding him guilty of first and second degree assault against a peace officer, and second degree assault against a nurse. He also appeals the sentence imposed. We affirm.

¶ 2 We construe section 13–90–107(1)(c), C.R.S.2013, which codifies Colorado's clergy-communicant privilege, to be inapplicable to defendant's communication with a hospital chaplain under the facts presented here. We also reject his assertion that the trial court misapprehended the applicable sentencing range.

## I. Background

¶ 3 After defendant attempted suicide while incarcerated, he was hospitalized for treatment of his wounds. A sheriff's deputy was assigned to remain in his room to ensure that he would not escape, as he could not be handcuffed due to his wounds, though his legs were shackled. Defendant asked the deputy if he would shoot defendant if he tried to escape. The deputy responded that he was confident he could catch defendant and that he did not want to have to kill anyone.

¶ 4 Just before the charged incident, defendant was unshackled and escorted to the bathroom. When defendant left the bathroom, he was holding a metal towel bar that he swung at the deputy. The bar struck the deputy on the head, and the deputy and defendant struggled. The deputy testified that during the struggle, defendant tried to remove the deputy's gun from its holster. Defendant also struck a nurse on the head, causing a laceration that required stitches. The blow caused lasting effects on the nurse's memory. Another nurse who was struck received a minor cut.

¶ 5 About thirty minutes after the incident, defendant told the hospital chaplain that he had planned the altercation.

¶ 6 Defendant testified at trial that, on the day of the altercation, he "wanted to die," and that he swung the towel bar at the deputy, hoping that the deputy would shoot and kill him.

¶ 7 The jury convicted defendant of one count of first degree assault and two counts of second degree assault against the deputy, and one count of second degree assault against one of the nurses. The trial court imposed consecutive sentences for these convictions.

## II. Clergy–Communicant Privilege

¶ 8 Defendant contends that the statements he made to the hospital chaplain are privileged under the clergy-communicant privilege, and that the trial court therefore erred when it admitted the chaplain's testimony that defendant had planned the altercation. We are not persuaded by these contentions.

### A. Standard of Review

¶ 9 We review de novo a trial court's interpretation of a statutory privilege. *People v. Turner,* 109 P.3d 639, 644 (Colo.2005); *see also Western Fire Truck, Inc. v. Emergency One, Inc.,* 134 P.3d 570, 573 (Colo.App.2006) (statutory interpretation is a question of law that we review de novo). When privileges are codified by statute, they must be strictly construed. *Turner,* 109 P.3d at 644.

¶ 10 We will not disturb a trial court's evidentiary rulings absent a showing of an abuse of discretion. *See Davis v. People,* 2013 CO 57, ¶ 13, 310 P.3d 58 (trial courts have considerable discretion to determine admissibility of evidence). A court abuses its discretion when its ruling (1) is based on an erroneous understanding or application of the law or (2) is manifestly arbitrary, unrea-

sonable, or unfair. *People v. Esparza–Treto,* 282 P.3d 471, 480 (Colo.App.2011).

### B. Analysis

¶ 11 In Colorado, the clergy-communicant privilege is codified by statute. § 13–90–107(1)(c). When the statutory conditions are met, the privilege operates to protect confidential communications between a clergy member and a person who seeks his or her guidance. Section 13–90–107(1)(c) provides:

> A clergy member, minister, priest, or rabbi shall not be examined without both his or her consent and also the consent of the person making the confidential communication as to any confidential communication made to him or her in his or her professional capacity in the course of discipline expected by the religious body to which he or she belongs.

This statute outlines four requirements that must be satisfied for the privilege to bar revelation of the communication at trial without consent of both the clergy member and the communicant. The communication must be: (1) made to a clergy member, minister, priest, or rabbi; (2) confidential; (3) made to the clergy member, minister, priest, or rabbi in his or her professional capacity; and (4) made in the course of discipline expected by the religious body to which the clergy member, minister, priest, or rabbi belongs. *See* § 13–90–107(1)(c). *Cf. People v. Police,* 651 P.2d 430, 431 (Colo.App.1982) (construing clergy-communicant privilege under prior version of § 13–90–107(1)(c)).

¶ 12 Defendant contends that because the conversation was with a clergy member, and because the chaplain testified that she kept confidential her communications in her capacity as chaplain, the clergy-communicant privilege applies. We disagree.

¶ 13 The chaplain testified that she was employed by the hospital in the capacity of a chaplain, and that her job was to counsel people and to pray with them if they so requested. Assuming, without deciding, that the hospital chaplain was a clergy member, we turn to the question of whether the communication was a "confidential communication" within the meaning of the statute.

¶ 14 The statute provides no guidance as to the meaning of the phrase "confidential communication," and we have found no Colorado case law that defines that phrase in the context of the clergy-communicant privilege.

¶ 15 Courts in other jurisdictions have held that the presence of a third party may destroy the confidential nature of an asserted clergy-communicant privileged communication. *See United States v. Webb,* 615 F.2d 828, 828 (9th Cir.1980) (presence of a security officer during confession to a crime by a prisoner to a prison chaplain destroyed confidentiality); *People v. Harris,* 34 Misc.3d 281, 934 N.Y.S.2d 639, 646 (N.Y.Sup.Ct.2011) (statements made by the defendant to a detective who was also a deacon of a church were not confidential as the statements were made in the presence of both the defendant's aunt and his brother; but clergy-communicant communications will remain confidential if the present third party is essential to the communication, such as an interpreter or agent of the person seeking counsel or the person giving it); *State v. Pulley,* 180 N.C.App. 54, 636 S.E.2d 231, 241 (2006) (conversation between the defendant and clergy member, held in the presence of a church elder who was not a clergy member, held not confidential and not subject to clergy-communicant privilege); *cf. State v. Orfi,* 511 N.W.2d 464, 469 (Minn.Ct.App.1994) (conversations between the defendant and ministers, held in hospital hallway, reception room, and waiting room, apart from others, were private and constituted privileged clergy-communicant statements); *People v. Brown,* 82 Misc.2d 115, 368 N.Y.S.2d 645, 651 (N.Y.Sup. Ct.1974) (suppressing a confession overheard by a police officer where the defendant was not advised that his confession over the telephone to his minister, if overheard by a police officer, could be used against him; indicating that, if the defendant had been so advised, he could have asked the officer to retreat to a safe distance while the defendant talked in hushed tones to the minister).

¶ 16 We also find persuasive Colorado case law interpreting the phrase "confidential communication" in the context of the

attorney-client privilege. A communication is confidential under the attorney-client privilege if it is " 'made in circumstances giving rise to a reasonable expectation that the [communication] will be treated as confidential.' " *People v. Tucker*, 232 P.3d 194, 198 (Colo.App.2009) (quoting *Wesp v. Everson*, 33 P.3d 191, 197 (Colo.2001)). To be privileged, the circumstances must indicate the intention of secrecy, *D.A.S. v. People*, 863 P.2d 291, 295 (Colo.1993), and the communication must be private or secret, *People v. Tippett*, 733 P.2d 1183, 1192 (Colo.1987).

¶ 17 Here, defendant spoke with the chaplain in defendant's hospital room while he was being guarded by a deputy. Though the chaplain testified that she kept confidential communications received in her capacity as a chaplain, on appeal defendant does not point to any evidence that any precautions were taken to secure privacy or maintain secrecy. The lack of evidence of such precautions, particularly given the presence of the deputy, tends to show a lack of confidentiality. *See Webb*, 615 F.2d at 828; *Pulley*, 636 S.E.2d at 241. Thus, the record supports the trial court's ruling that the conversation between defendant and the chaplain about the assault does not satisfy the "confidential communication" requirement of section 13–90–107(1)(c).

¶ 18 Furthermore, on appeal defendant has not presented any argument or pointed to any evidence in the record that could demonstrate that the communication satisfied the fourth requirement of the statute—that the communication was made to the chaplain in the course of discipline expected by the religious body to which she belongs. *Cf. State v. Archibeque*, 223 Ariz. 231, 221 P.3d 1045, 1049 (Ariz.Ct.App.2009) (holding that the requirement that the communication be directed to a clergy member in the capacity as a spiritual leader within his or her religious denomination was met where the defendant made a confession to a church bishop in a church office, and the confession was made "in furtherance of the repentance process as recognized by the Church").

¶ 19 Because the communication here was not confidential and there was no evidence presented at trial that the communication was made to the chaplain while she was acting in the course of discipline expected by her religious body, we need not address the remaining statutory requirements. Because these two statutory elements of the privilege have not been met, defendant has failed to demonstrate that the trial court erred in admitting the chaplain's testimony.

## III. Sentencing

¶ 20 Defendant next contends that the trial court misapprehended the sentencing range applicable to his convictions. As support for this contention, defendant points to a statement by the prosecutor that "[defendant] is looking at a minimum of fifteen years in the Department of Corrections." The applicable sentencing ranges for defendant's convictions are ten to thirty-two years for first degree assault, and five to sixteen years for second degree assault. *See* § 18–1.3–401(1)(a), C.R.S.2013; § 18–1.3–406(1)(a), C.R.S.2013. Section 18–1.3–406(1)(a) requires that when a person is convicted of separate crimes of violence arising out of the same incident, sentences for such convictions must be served consecutively. Given that defendant's convictions arose out of the same incident, and that the minimum time he could serve is ten years for first degree assault and five years for second degree assault, we see no error in the prosecutor's statement. Neither does the record support an inference that the trial court was misled as to the applicable sentencing ranges.

¶ 21 On the contrary, the trial court stated at the sentencing hearing that it had read the presentence report. That report described the correct sentencing ranges. Further, the court imposed sentences that fell within the correct sentencing ranges. Thus, we presume that the trial court correctly applied the sentencing statutes to defendant's convictions. *See LePage v. People*, 2014 CO 13, ¶ 25, 320 P.3d 348 (presumption of regularity of trial court proceedings dictates that appellate courts should presume that trial court did not commit error absent affirmative evidence to the contrary).

¶ 22 We discern no error in the sentence imposed, and we uphold it.

¶ 23 The judgment and sentence are affirmed.

JUDGE DAILEY and JUDGE MILLER concur.