The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 1, 2019

## 2019COA116

**No. 16CA1709, *Peo v Huggins* — Criminal Procedure — Postconviction Remedies; Attorneys and Clients — Ineffective Assistance of Counsel — Conflicts of Interest**

*Cuyler v. Sullivan*, 446 U.S. 335 (1980), cannot be read so broadly as to encompass a conflict of interest involving an attorney's personal interests. Applying *Sullivan* in cases arising from a lawyer's conflict of interest resulting from the lawyer's self-interest would undermine the uniformity and simplicity of *Strickland v. Washington*, 466 U.S. 668 (1984). A division of the court of appeals holds that *Sullivan* applies when an attorney labors under a narrower category of conflicts of interest: where the attorney's conflict of interest arises from multiple concurrent representation.

Court of Appeals No. 16CA1709
Arapahoe County District Court No. 93CR1584
Honorable F. Stephen Collins, Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Chester L. Huggins,

Defendant-Appellant.

_____

ORDER AFFIRMED

Division IV
Opinion by JUDGE LIPINSKY
Román, J., concurs
J. Jones, J., specially concurs

Announced August 1, 2019

_____

Philip J. Weiser, Attorney General, Matthew S. Holman, First Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Robin M. Lerg, Alternate Defense Counsel, Montrose, Colorado, for Defendant-
Appellant

¶ 1    Defendant, Chester L. Huggins, appeals the denial of his motions for postconviction relief under Crim. P. 35(c).  He contends that the delay in resolution of his motions violated his "due process right to a speedy and meaningful postconviction review."  Huggins further contends that the postconviction court erred in denying his ineffective assistance of counsel claim because the attorney who represented him both at trial and in his direct appeal labored under a conflict of interest.

¶ 2    We affirm because the application of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), to ineffective assistance of counsel cases premised on a purported conflict of interest involving the lawyer's self-interest would undermine the uniformity and simplicity of *Strickland v. Washington*, 466 U.S. 668 (1984).

I.    Background

¶ 3    We address only the relevant portion of the lengthy history of this case.

¶ 4    Huggins was convicted of first degree murder, conspiracy to commit first degree murder, and being an accessory to a crime. Forrest Lewis represented Huggins both at his trial and in the direct appeal.  Before trial, Huggins filed a pro se motion for appointment

1

of new counsel on various grounds, including Lewis's alleged failure to assist Huggins in preparing for trial, lack of legal knowledge, failure to communicate, and bias. The trial court denied the motion. In addition, Lewis filed two separate motions for leave to withdraw on the grounds that Huggins believed that he and Lewis could no longer work together after they had discussed a possible plea agreement. The trial court also denied Lewis's motions.

¶ 5    After the trial, the court granted Lewis's motion for appointment as Huggins's appellate counsel. A division of this court affirmed the judgment of conviction. *People v. Huggins*, (Colo. App. No. 94CA1159, May 23, 1996) (not published pursuant to C.A.R. 35(f)).

¶ 6    In February 1998, Huggins filed a pro se motion to vacate his judgment of conviction under Crim. P. 35(c) (First Motion). In the First Motion, he alleged that Lewis had been ineffective for several reasons, including because Lewis had "failed to raise conflict of interest issues between himself and his client at trial" and had not interviewed three potential witnesses.

¶ 7    Later that year, Huggins filed a second motion to vacate his judgment of conviction, also under Crim. P. 35(c) (Second Motion).

2

In the Second Motion, Huggins again argued that Lewis had been ineffective. Concurrently, he filed a motion for the appointment of counsel to assist with his postconviction motions. The court appointed Steven Katzman to represent Huggins in connection with the Second Motion.

¶ 8 The First and Second Motions remained pending on the postconviction court's docket for the next eleven years. During that time, Huggins filed a pro se motion for the appointment of new counsel (New Counsel Motion), in which he expressed his displeasure with Katzman's performance. The court took no action on the New Counsel Motion, however. More than two years later, Katzman moved to withdraw on the basis of irreconcilable differences with Huggins. The court granted Katzman leave to withdraw.

¶ 9 In February 2010, Huggins filed a third pro se motion for postconviction relief, again under Crim. P. 35(c) (Third Motion), which also included an ineffective assistance of counsel claim. The postconviction court denied the Third Motion in an order entered in July 2010. That order made no reference to the First or Second Motions, however.

¶ 10    In March 2013, Huggins filed a "Request for a Status Report," in which he sought information regarding the status of the First and Second Motions (Status Request). The postconviction court responded that it would not take action on the Status Request because Huggins had not served it on the People.

¶ 11    More than two years later, Huggins sent a letter to the Chief Justice of the Colorado Supreme Court (Letter), in which he alleged a "gross violation of [his] due process rights by the delay" in adjudication of his First and Second Motions.

¶ 12    The postconviction court appointed Evan Zuckerman as new counsel for Huggins in March 2015. Zuckerman filed a status report in which she requested additional time to investigate the grounds for Huggins's postconviction motions and a supplement (Supplement) to the Third Motion. The Supplement restated Huggins's ineffective assistance of counsel claim and argued that Lewis had been "ineffective in advising and raising as a possible appellate issue the trial court's denial of the two motions to withdraw resulting in abandonment of a possible appellate claim for relief." Additionally, Huggins argued in the Supplement that he had been deprived of his statutory right to postconviction review

because the postconviction court could not "properly and meaningfully review a complete record of proceedings." The record reflects that Lewis had not ordered transcripts of certain of the proceedings in the trial court.

¶ 13    Following an evidentiary hearing at which Lewis, Huggins, and other witnesses testified, the postconviction court denied all three of Huggins's postconviction motions (collectively, the Crim. P. 35(c) Motions). (The court inexplicably denied the Third Motion twice.)

¶ 14    Huggins appeals the denial of the Crim. P. 35(c) Motions.

## II.    Huggins's Due Process Claims

¶ 15    Huggins contends that his due process right to a "speedy and meaningful postconviction review" was violated because of the delay in adjudication of the Crim. P. 35(c) Motions. The parties dispute whether Huggins preserved this due process argument.

¶ 16    We conclude that Huggins did not preserve the argument and, thus, we cannot consider it.

### A.    The Law on Preservation of Arguments

¶ 17    When a defendant does not raise an issue in a postconviction motion or during the hearing on that motion, and the postconviction court therefore does not have an opportunity to rule

on the issue, as a general rule, the issue is not properly preserved for appeal and we will not consider it. *DePineda v. Price*, 915 P.2d 1278, 1280 (Colo. 1996) ("Issues not raised before the district court in a motion for postconviction relief will not be considered on appeal of the denial of that motion."); *People v. Golden*, 923 P.2d 374, 375 (Colo. App. 1996) (holding that, in an appeal of a Crim. P. 35(c) motion, the court of appeals will not consider allegations not raised in the motion and thus not ruled on by the trial court).

¶ 18    This rule applies to both constitutional and nonconstitutional arguments presented for the first time in an appeal of a ruling on a Crim. P. 35(c) motion. *See People v. Jackson*, 109 P.3d 1017, 1019 (Colo. App. 2004) (declining to consider due process and other constitutional arguments not presented to the trial court in Crim. P. 35(c) motion).

¶ 19    Despite the broad language of cases such as *DePineda* and *Golden*, we have the discretion to consider an unpreserved argument, but only in rare cases. *See Hagos v. People*, 2012 CO 63, ¶ 23, 288 P.3d 116, 122 (holding that reversal for unpreserved error "must be rare to maintain adequate motivation among trial participants to seek a fair and accurate trial the first time"). More

specifically, this court may consider unpreserved constitutional arguments, "but only where doing so would clearly further judicial economy." *See People v. Houser*, 2013 COA 11, ¶ 35, 337 P.3d 1238, 1248. Without such a limitation, a defendant might intentionally "withhold a meritorious objection, permit error to occur, and then, in the event of a conviction, raise the error for the first time on appeal." *Id.*, ¶ 45, 337 P.3d at 1249 (quoting *People v. Smith*, 121 P.3d 243, 253 (Colo. App. 2005) (Webb, J., specially concurring)).

### B.   Huggins Failed to Preserve His Due Process Argument

¶ 20   Huggins contends that he preserved his argument regarding the alleged violation of his due process right "to a speedy and meaningful" postconviction review "by filing pleadings complaining about the delay in resolving [the Crim. P. 35(c) Motions]." Huggins's argument misses the mark.

¶ 21   He cites four documents through which he allegedly preserved the due process argument: the New Counsel Motion, a one-page attachment to the First Motion, the Status Request, and the Letter.

- In the New Counsel Motion, Huggins requested the appointment of new counsel because Katzman allegedly

7

had a conflict of interest and had unreasonably delayed in meeting with Huggins. The New Counsel Motion did not mention any delay in adjudication of Huggins's postconviction motions.

- The one-page attachment to the First Motion described the anticipated testimony of individuals whom Lewis had not called at trial but did not address Huggins's due process claim.

- The Status Request appears to be a motion for a status report on the First and Second Motions, both of which alleged ineffective assistance of counsel only. Huggins specifically asked the postconviction court to "set this matter down so this court could declar[e] whether counsel is ineffective." The Status Request said nothing about a violation of Huggins's due process rights.

- In the Letter, Huggins alleged that the postconviction court had "committed a gross violation of [his] due process rights by the delay in action." But the Letter was not a motion and did not present the due process issue to the postconviction court for a ruling. *See Price,* 915

P.2d at 1280; *People v. Simms*, 185 Colo. 214, 218, 523 P.2d 463, 465 (1974).

¶ 22    Moreover, the Supplement, which summarized Huggins's postconviction arguments, made no reference to an alleged violation of his due process rights as a consequence of the postconviction court's inaction on the Crim. P. 35(c) Motions.  Although the Supplement contained a due process argument, in that contention, Huggins asserted that Lewis's failure to request transcripts of certain proceedings in the trial court violated Huggins's due process rights because, without the transcripts, the postconviction court could not review a complete record of the underlying proceedings.  Further, Huggins's Crim. P. 35(c) Motions (as well as his other postconviction filings) did not include an argument that the delay in the rulings on the Rule 35(c) Motions violated his right to due process.

¶ 23    Huggins's argument is materially different from the unpreserved arguments our supreme court determined were forfeited, and not waived, in Cardman v. People, 2019 CO 73, ¶ 18, ___ P.3d ___, ___, and *Phillips v. People*, 2019 CO 72, ¶ 38, ___ P.3d ___, ___.  *See Cardman*, ¶ 10 (waiver is the intentional

9

relinquishment of a known right or privilege, while forfeiture is the failure to make the timely assertion of a right); *Phillips*, ¶¶ 16-17 (same).

¶ 24    Unlike this case, both *Cardman* and *Phillips* involved defendants who sought to raise new arguments in support of positions they had taken in the trial court.  In *Cardman* and *Phillips*, the defense presented on appeal new arguments for suppression of evidence it had challenged in the trial court.  *See Cardman*, ¶¶ 6-7, 11; *Phillips*, ¶¶ 13-14 (explaining that the defendant was singing a "different tune" and had "switched horses" in advancing the new arguments).

¶ 25    Huggins not only failed to present his due process argument to the postconviction court, but he never raised in the postconviction court *any* argument, based on *any* legal theory, that he was entitled to relief because the court had waited too long to rule on the Crim. P. 35(c) Motions.  Huggins is not merely changing tunes or horses; he never sang a note or climbed into a saddle before filing his appeal.  We do not read *Cardman* or *Phillips* as permitting a defendant to raise an entirely new issue on an appeal of a postconviction motion.

¶ 26    Because the postconviction court had no opportunity to rule on Huggins's due process argument, Huggins failed to preserve it. And this is not one of those rare cases in which we will consider an unpreserved constitutional argument to "clearly further judicial economy."  For these reasons, we will not consider Huggins's unpreserved argument that the delay in adjudication of the Rule 35(c) Motions violated his due process rights.  *See Price,* 915 P.2d at 1280; *People v. Boulden,* 2016 COA 109, ¶ 5, 381 P.3d 454, 455.

### III.    Ineffective Assistance of Counsel

¶ 27    Huggins next contends that the postconviction court erred in finding that he had not proven his ineffective assistance of counsel claim.  He argues that, by representing him at both the trial and on appeal, Lewis labored under a conflict of interest and, therefore, was ineffective, as a matter of law.

### A.    Standard of Review

¶ 28    We review the denial of a Crim. P. 35(c) motion following a hearing for an abuse of discretion.  *People v. Firth,* 205 P.3d 445, 449 (Colo. App. 2008).  A district court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or is based

11

on an erroneous understanding or application of the law. *People v. Trammell*, 2014 COA 34, ¶ 10, 345 P.3d 945, 947-48.

¶ 29 A claim of ineffective assistance of counsel presents mixed questions of fact and law. *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007). We defer to a postconviction court's findings of fact when they are supported by the record, but we review its legal conclusions de novo. *West v. People*, 2015 CO 5, ¶ 11, 341 P.3d 520, 525.

B. Huggins Preserved His Ineffective Assistance of Counsel Claim

¶ 30 The People contend that Huggins failed to preserve his conflict of interest claim because he incorrectly framed it as "an ineffective assistance of counsel claim[] under *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]." We disagree.

¶ 31 We do not require parties to use "talismanic language" to preserve an argument for appeal. *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004). Where a defendant raises an issue sufficiently to provide the district court with an opportunity to rule on it, the issue is sufficiently preserved. *Boulden*, ¶ 4, 381 P.3d at 455.

¶ 32 In the Supplement, Huggins asserted that Lewis was "ineffective in advising and raising as a possible appellate issue the trial court's denial of Lewis's motions to withdraw, resulting in abandonment of a possible appellate claim for relief." Huggins contends that Lewis did not raise his conflict of interest on appeal because "it required an evaluation of Lewis' own conduct precipitating the motions to withdraw" and Lewis "had a strong disincentive to raise the denials of the withdrawal motions or to even communicate candidly with Mr. Huggins about the claim." Huggins specifically argued in the Supplement that

> [w]hen Mr. Lewis was appointed as appellate counsel, he was wholly unable to effectively advise Mr. Huggins on a potential claim regarding the trial court's denial of Mr. Huggins [sic] request for substitute counsel. An effective advisement would have required Mr. Lewis to accurately assess his own ineffectiveness as trial counsel, which created a conflict of interest in his representation of Mr. Huggins in his appeal. By failing to raise a potentially meritorious claim, Mr. Huggins was denied effective assistance of counsel in his appeal.

¶ 33 We conclude that this argument was sufficient to provide the postconviction court with an opportunity to consider Huggins's argument that Lewis was ineffective because he had labored under

13

a conflict of interest. Thus, Huggins preserved his claim of ineffective assistance of counsel premised on Lewis's alleged conflict of interest.

C.  The Legal Standard Applicable to Ineffective Assistance of Counsel Claims Based on a Conflict Between the Attorney's Self-Interest and the Client's Interests

¶ 34   We next consider whether Huggins's claim of ineffective assistance of counsel is governed by *Strickland*, which applies to general allegations of ineffective assistance of counsel, or by *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which applies when an attorney labors under a narrower category of conflicts of interest. Each standard places a different burden on a defendant attempting to demonstrate a violation of the constitutional right to conflict-free counsel.

¶ 35   To prevail on an ineffective assistance of counsel claim under *Strickland*, a defendant must prove that counsel's performance was so deficient as to be "outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, and that "the deficient performance prejudiced the defense," *People v. Villanueva*, 2016 COA 70, ¶ 29, 374 P.3d 535, 542. The defendant must also demonstrate "a reasonable probability that, but for counsel's

14

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

¶ 36 In contrast, under *Sullivan,* a defendant must demonstrate only that his counsel labored under a conflict of interest that adversely affected the lawyer's performance. *Sullivan,* 446 U.S. at 348. Where *Sullivan* applies, the defendant must show by a preponderance of the evidence that (1) counsel had a conflict of interest; and (2) the conflict adversely affected the representation. *West,* ¶ 65, 341 P.3d at 534. Once a defendant makes a prima facie showing of a conflict under *Sullivan,* prejudice is presumed and nothing more is required for relief. *Sullivan,* 446 U.S. at 349-50; *Villanueva,* ¶ 30, 374 P.3d at 542. The *Sullivan* adverse effect inquiry thus places a lesser burden on a defendant than does the *Strickland* prejudice analysis. *Villanueva,* ¶ 30, 374 P.3d at 542.

¶ 37 In *Mickens v. Taylor,* 535 U.S. 162 (2002), the Supreme Court said in dicta that *Sullivan* applies only to those cases in which the attorney's conflict of interest arises from multiple concurrent

representations. *See id.* at 174-75. The federal courts disagree on the extent to which *Mickens* narrowed the scope of *Sullivan. See United States v. Williamson,* 859 F.3d 843, 854 n.3 (10th Cir. 2017) (collecting cases). And the broad language of *Villanueva* suggests that *Sullivan* can apply to conflicts that do not involve the representation of parties with differing interests. *See Villanueva,* ¶ 30, 374 P.3d at 542.

¶ 38    We hold that *Sullivan* cannot be read so broadly as to encompass the type of conflict of which Huggins complains, however. *See Ezekor v. United States*, No. CV 10-0549, 2012 WL 12991292, at *9 (S.D. Tex. June 13, 2012) (noting that, although some courts have applied *Sullivan* to "ineffective assistance of counsel claims grounded on a conflict of interest between an attorney's personal or financial interests and the attorney's clients' interests," an ineffective assistance of counsel claim "grounded on a conflict of interest *between* an attorney's duty to a client and the attorney's own self-interest is governed by the *Strickland* standard" (citing *United States v. Newell,* 315 F.3d 510, 516 (5th Cir. 2002))).

¶ 39    The majority in *Mickens* persuasively reasoned that *Sullivan* articulated a rule applicable only to one particular category of

16

conflict of interest in light of the "high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice . . . ." *Mickens*, 535 U.S. at 175. The Court underscored that "[n]ot all attorney conflicts present comparable difficulties." *Id.*

> This is not to suggest that one ethical duty is more or less important than another. The purpose of our . . . *Sullivan* exception[] from the ordinary requirements of *Strickland,* however, is not to enforce the Canons of Legal Ethics, but to apply needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel.

*Id.* at 176.

¶ 40    In reliance on the *Mickens* language, courts have declined to extend *Sullivan* to conflict situations not involving multiple concurrent representation. *See, e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (explaining that "the *Sullivan* exception applies where the petitioner shows: (1) that his counsel actively represented conflicting interests; and (2) that this adversely affected his counsel's performance"); *Earp v. Ornoski*, 431 F.3d 1158, 1184 (9th Cir. 2005) (holding that the *Sullivan* test does not apply to conflict of interest arising from attorney's romantic interest in

17

defendant); *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995) (en banc) (noting that *Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context).

¶ 41 We agree with these authorities and therefore reject Huggins's contention that *West* can be read expansively to require application of the *Sullivan* test to conflicts involving an attorney's personal interests. *See West*, ¶ 38, 341 P.3d at 530 (assuming, without deciding, that *Sullivan* applies to alleged conflicts of interest arising from successive representation of trial witnesses against a defendant). Applying *Sullivan* in cases arising from a lawyer's conflict of interest resulting from the lawyer's self-interest would undermine the uniformity and simplicity of *Strickland*. *Beets*, 65 F.3d at 1265.

¶ 42 Thus, we review Huggins's conflict of interest argument under the *Strickland* test.

### D. Huggins Did Not Establish That Lewis Was Ineffective Under the *Strickland* Test

¶ 43 Huggins contends that Lewis was ineffective because he labored under a conflict of interest while representing Huggins.

According to Huggins, Lewis's "own professional interest" conflicted with Huggins's desire to argue on appeal that the trial court erred in denying Lewis's motions to withdraw.

¶ 44    The record supports the trial court's key findings of fact regarding Lewis's representation of Huggins:

- Lewis's disagreement with Huggins had focused on Lewis's recommendation that Huggins accept the plea agreement the prosecution had offered.

- Lewis encouraged Huggins to accept the plea agreement because of the strength of the evidence against Huggins and Lewis's belief that the chances of winning at trial were very low.

- Huggins lost confidence in Lewis's ability to advocate on behalf of Huggins when Lewis encouraged Huggins to accept the plea agreement.

- It is not unusual for defense counsel to lose the confidence of his or her client after recommending that the client accept a plea agreement.

- Huggins had been reluctant to accept the risk of going to trial.

- By the time of trial, Lewis and Huggins had resolved their differences.

- Huggins had been frustrated with Lewis's performance at trial primarily because Lewis had not interviewed the three potential witnesses whose testimony Huggins believed would support his defense.

- There is no reasonable basis to believe the jury would have acquitted Huggins if the jury had heard the potential witnesses' testimony.

- The disagreements between Huggins and Lewis regarding strategy never rose to the level of a conflict of interest.

- There had never been a complete breakdown in Huggins's communications with Lewis.

- The disagreements between Huggins and Lewis had not justified the appointment of new counsel for Huggins.

- Lewis presented a vigorous defense at trial.

- Lewis did not prevent Huggins from making any of the decisions related to the trial that are reserved to the defendant.

- Lewis and Huggins discussed Huggins's appellate rights, potential appellate issues, and Huggins's right to a different lawyer on appeal.

- Huggins believed Lewis had fought hard for him at trial and was comfortable with Lewis serving as appellate counsel.

- Lewis did not believe any issue prevented him from properly representing Huggins on appeal.

- Lewis would not have represented Huggins on appeal if Huggins had not expressly agreed that Lewis should serve as his appellate counsel.

- Lewis evaluated the entirety of the trial proceedings in determining the issues that could be raised on appeal, ordered transcripts of only those portions of the trial proceedings reflecting issues that legitimately could be raised on appeal, and determined that the denial of the motions to withdraw did not raise legitimate appellate issues.

- Huggins could not point to any potential errors documented in those portions of the trial proceedings for which Lewis had not ordered transcripts.

¶ 45    The trial court's meticulous findings of fact establish that, contrary to Huggins's argument, Lewis's personal interests had not materially limited his ability to represent Huggins on appeal. Therefore, Lewis had not operated under a conflict of interest at that time.  "A conflict of interest exists when the attorney's ability to represent a client is materially limited by the attorney's own interests." *People v. Delgadillo*, 2012 COA 33, ¶ 9, 275 P.3d 772, 775; *see* Colo. RPC 1.7(b).  Challenging the trial court's rulings on the motions to withdraw would not, as Huggins contends, have required Lewis to contradict his earlier assertion to the trial court that there was good cause for withdrawal.

¶ 46    Lewis had felt no compunction about asking the trial court to allow him to withdraw as Huggins's attorney.  Huggins does not explain why Lewis would have been unwilling to raise on appeal the very same argument for withdrawal that Lewis had presented to the trial court.

¶ 47    We are unaware of any Colorado case law establishing a per se rule that the same attorney may not represent a defendant at trial and on appeal. "We disagree that trial counsel cannot effectively assist a client on appeal. Many trial attorneys represent their clients on appeal, in part, because of their intimate knowledge of the facts and law of the case." *Rogers v. State*, 253 P.3d 889, 897 (Mont. 2011).

¶ 48    Lastly, Huggins has not established that the arguments concerning the motions for leave to withdraw would have been stronger than the arguments that Lewis presented on appeal. "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome . . . ." *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007) (quoting *Ellis v. Hargett*, 302 F.3d 1182, 1189 (10th Cir. 2002)). "Appellate counsel is not required to raise on appeal every nonfrivolous issue a defendant desires to raise." *Id.*

¶ 49    For these reasons, Lewis's representation of Huggins did not fall "outside the wide range of professionally competent assistance" and was not ineffective. *See Strickland*, 466 U.S. at 690.

## IV. Conclusion

¶ 50    The postconviction court's order is affirmed.

JUDGE ROMÁN concurs.

JUDGE J. JONES specially concurs.

JUDGE J. JONES, specially concurring.

¶ 51     I concur in the majority's judgment in full.  But I write separately because I believe defendant invited any error in the district court's application of *Strickland v. Washington*, 466 U.S. 668 (1984), to his conflict of interest claim.

¶ 52     In defendant's First Motion he didn't make any claim about a conflict of interest.  He did assert that the two-prong *Strickland* test applied to his ineffective assistance claims.

¶ 53     Defendant's Second Motion alleged, in entirely conclusory fashion, that his trial/appellate counsel "failed to raise conflict of interest issues between himself and his client at trial."  It didn't talk about a legal test.

¶ 54     Defendant's Third Motion didn't mention a conflict of interest at all.

¶ 55     The Supplement filed by counsel on defendant's behalf raised the conflict of interest issue.  And it argued expressly, and at length, that the *Strickland* test applied to that issue.  On the issue of prejudice, defendant argued that he had established prejudice under *Strickland*.

¶ 56    In denying defendant's conflict of interest claim, the district court applied the *Strickland* prejudice test for which defendant had argued.  Now on appeal, defendant contends that the district court erred by applying that test.  Our case law is clear, however, that having urged a different test below, defendant is barred by the invited error doctrine from claiming error in the application of that test.  *See Horton v. Suthers*, 43 P.3d 611, 618 (Colo. 2002); *People v. Zapata*, 779 P.2d 1307, 1308-09 (Colo. 1989), *cited with approval in People v. Rediger*, 2018 CO 32, ¶ 34; *People v. Collins*, 730 P.2d 293, 304-05 (Colo. 1986); *Gray v. People*, 139 Colo. 583, 588, 342 P.2d 627, 630 (1959), *cited with approval in Rediger*, ¶ 34; *see also People v. Hamilton*, 381 N.E.2d 74, 75 (Ill. App. Ct. 1978) ("[D]efendant cannot inject an erroneous statement of law into an argument before the trial court and then rely on his own error to obtain a reversal on appeal."); *State v. Jenkins*, 840 A.2d 242, 249 (N.J. 2004).

¶ 57    So although I agree with the majority's analysis of the conflict of interest issue, I would not address it.