24CA0005 Peo v Broadus 05-29-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0005
City and County of Denver District Court No. 15CR2829
Honorable Adam J. Espinosa, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Leslie K. Broadus,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Lipinsky and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Suzan Trinh Almony, Alernate Defense Counsel, Broomfield, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 Defendant, Leslie K. Broadus, appeals the postconviction court's post-hearing denial of his three ineffective assistance of counsel claims. We affirm.

## I. Background

¶ 2 The victim, Jerry Taylor, sold a knock-off Rolex watch to two of Broadus's acquaintances, Royce Tiller and Damon Webster. Later, Tiller and Webster sought to get their money back. They asked Tiller's girlfriend, Ciara McCray, to arrange a meeting with the victim by pretending that she wanted to buy a watch from him. At the meeting, Tiller, Webster, and a third man (alleged to be Broadus) confronted the victim.

¶ 3 The victim was concerned he might be robbed, so he suggested that he and the men drive to a nearby bank. He drove in his vehicle with Tiller as a passenger. Webster and the third man drove in a different vehicle. On the way to the bank, the victim pulled into a police substation, jumped out of the vehicle, and started banging on the doors. Meanwhile, Tiller abandoned the victim's vehicle and walked away. When no one answered at the substation, the victim drove off. Webster and the third man gave chase in their vehicle.

The chase ended in an alley, where the victim was shot multiple times. He survived the shooting.

¶ 4 During the subsequent investigation, the victim identified Broadus from a photo array as the third man involved in the shooting. Before police interviewed McCray, someone broke down the door to her home. McCray initially lied to the police, but she later identified Tiller, Webster, and Broadus as the three men who confronted the victim about the replica watch. Tiller also identified Broadus as the third man involved.

¶ 5 The prosecution charged Broadus with attempted first degree murder, first degree assault, and attempted aggravated robbery, based on allegations that he was either the shooter or a complicitor. The jury convicted him of first degree assault but acquitted him of the remaining charges.

¶ 6 A division of this court affirmed Broadus's conviction on direct appeal. *People v. Broadus*, (Colo App. No. 17CA0221, Aug. 16, 2018) (not published pursuant to C.A.R. 35(e)).

¶ 7 Broadus then filed a pro se Crim. P. 35(c) motion for postconviction relief, which was later supplemented. As relevant to this appeal, Broadus asserted that trial counsel rendered ineffective

assistance by failing to (1) file a motion to suppress the victim's photo identification; (2) investigate and argue the lack of specific physical evidence tying Broadus to the shooting; and (3) object to testimony suggesting that he broke down McCray's door. Following a hearing, the postconviction court denied the motion.

¶ 8 Broadus appeals, and we affirm.

## II. Ineffective Assistance of Counsel

¶ 9 To prevail on an ineffective assistance claim, a defendant must prove that (1) counsel's performance was constitutionally deficient and (2) counsel's constitutionally deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The prejudice prong requires a defendant to show a reasonable probability that, but for counsel's deficient performance, "the result of the proceeding would have been different." *Id.* at 694. Courts may deny an ineffective assistance claim if the defendant fails to prove either deficient performance or prejudice. *See Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

¶ 10 We review the post-hearing denial of ineffective assistance claims as a mixed question of fact and law. *People v. Wardell*, 2020 COA 47, ¶ 27. We defer to the court's findings of fact if supported

by the record, but we review its legal conclusions de novo, including its assessment of prejudice. *People v. Huggins*, 2019 COA 116, ¶ 29; *People v. Sharp*, 2019 COA 133, ¶ 12.

¶ 11 We conclude the record clearly establishes that Broadus did not prove prejudice for any of his ineffective assistance claims.

### A. Failure to File Motion to Suppress

¶ 12 Broadus first argues that he was prejudiced by trial counsel's failure to file a motion to suppress the victim's identification of him. He argues a motion to suppress would have been meritorious because the investigating detective's comments while the victim reviewed the photographic array influenced the victim's identification, and the detective's presence as an officer involved in the investigation contravened departmental identification procedure.[1] We conclude that the identification procedure was not

---

[1] While Broadus also argues his attorney was ineffective by failing to view the original photo array presented to the victim — viewing only a black and white copy of the array — he does not develop the argument that this failure to investigate constituted ineffective assistance. Therefore, we do not consider it. *See People v. Cuellar*, 2023 COA 20, ¶ 44.

impermissibly suggestive and therefore reject Broadus's argument that a motion to suppress would have been successful.

¶ 13     A defendant is denied due process when an in-court identification is based upon an out-of-court identification that is so suggestive as to render the in-court identification unreliable. *People v. Borghesi*, 66 P.3d 93, 103 (Colo. 2003). An out-of-court photographic identification is admissible if the defendant fails to demonstrate that the array was impermissibly suggestive, including based on how the police presented it to a witness. *Id.*; *see also Bernal v. People*, 44 P.3d 184, 191 (Colo. 2002) (manner of presentation is one of the factors we consider when evaluating whether a pretrial photo identification procedure was impermissibly suggestive).

¶ 14     An officer not involved in the investigation showed the victim the photo array. The victim paused on Broadus's photo and said, "Damn, I want to say that's that third dude, I swear . . . . I'm not too for sure, but man, I don't want to pick the wrong person, but hey, he look like him." Shown each photo a second time, the victim again paused on Broadus's photo, saying that he thought it showed the third person, but he was "not for sure." The investigating

5

detective, who was in the room with the other officer, then asked if one of the photos stood out to the victim, and the victim again identified Broadus's photo — "the one I kept staring at." The investigating detective told the victim to circle and initial that photo, and the victim said, "he looked like it, I want to say it but . . . ." The detective responded, "No that's okay, we're not going to arrest the wrong person." The victim said, "Alright, cool, okay," and initialed the photo.

¶ 15    On this record, we conclude that the identification procedure was not impermissibly suggestive. Broadus points to no binding or persuasive authority to suggest that the detective's mere presence in the room and few statements to the victim made the investigation procedure unreliable.[2] And while the victim expressed some hesitation while choosing Broadus's photo from the array, the record does not support Broadus's assertion that the detective's comments made the difference. As the trial court observed, the victim stared at Broadus's photo longer than any other in the array.

---

[2] Instead, he relies only on the police department's internal policy, which seeks to ensure that "the case detective/officer does not unintentionally influence the witness" and to prevent later arguments to that effect.

He indicated that the man in this photo looked like the man involved in the shooting before the detective said anything. And when the detective asked if any of the photos jumped out to him — a question that was not suggestive in itself — the victim again chose Broadus's photo.

¶ 16 Even though the detective reassured the victim that he wouldn't arrest the wrong person, he did so only after the victim had selected Broadus's photo as the one that jumped out to him. While Broadus argues the detective's statements influenced the victim's level of certainty, the detective did not make any further statements before the victim emphasized that he had selected the person involved. Indeed, after the detective left the room, the victim said to the other officer that the man in the photo he selected "look[ed] like" the third man involved. And when the detective returned and asked the victim to summarize the photo in his own words, the victim confirmed again that he looked like him, "a lot, real a lot, . . . 100%."

¶ 17 We conclude that, even if trial counsel had filed a motion to suppress the victim's identification, the motion would have been

denied because the procedure was not impermissibly suggestive. Therefore, Broadus has failed to show prejudice.

### B.  Failure to Investigate and Argue Lack of Physical Evidence

¶ 18   Broadus also argues that the outcome of his trial would have been different if trial counsel had investigated and litigated the fact that (1) no gunshot residue was found on him; (2) his fingerprints were not found in either of the two vehicles involved in the shooting; and (3) his phone records, pings, and locations "would have . . . indicated that he was not present at the shooting."

¶ 19   As an initial matter, Broadus's claim that his phone records, pings, and locations would have established his innocence is conclusory.  To prevail on this kind of ineffective assistance claim, a defendant "must do more than simply allege that other evidence could have aided his defense; he must identify the evidence and demonstrate that it would have advanced his defense." *People v. Villanueva*, 2016 COA 70, ¶ 67.  Because Broadus does not indicate where his phone and location records would have placed him on the day of the shooting, we reject this argument.

¶ 20   In addition, Broadus has not established that the result of his trial would have been different had counsel conducted further

investigation into the lack of gunshot residue or fingerprint evidence, or if counsel had presented the case differently. Trial counsel testified that part of his strategy was to emphasize the lack of physical evidence in the case. And recall that Broadus was acquitted of two of three charged offenses. While pointing to a specific lack of evidence may have been helpful to the defense, Broadus cannot show that it would have resulted in a different verdict. Because he was charged both as a principal and complicitor, the jury could have convicted him even if it concluded — based on the lack of gunshot residue or otherwise — that he was not the shooter.

¶ 21     Likewise, the lack of fingerprint evidence was not conclusive on the issue of guilt. Defense counsel testified that calling a fingerprint expert in this case "would have been almost a zero-sum game." That is, if Broadus's fingerprints had been investigated and found in either vehicle, that would have been bad for the defense. Counsel also testified that, even if no fingerprints were found, based on his decades of experience, an expert would testify that the lack of fingerprint evidence could not reliably establish whether Broadus had in fact been in the vehicles.

¶ 22    Moreover, even if the lack of fingerprint evidence would have been helpful to the defense, other evidence tied Broadus to the crime. As discussed, the victim reliably identified him as the third man involved. McCray and Tiller also identified him, and even if Broadus is correct that their identifications were less credible because of the favorable terms the two witnesses received from the prosecution, other evidence backed up their identifications. Specifically, McCray testified that, on the day of the shooting, she was able to contact Webster and the third man involved by sending Broadus a message on Facebook. She testified that Broadus responded to the message by sending her his phone number, and when she called that number, Webster picked up.

¶ 23    Based on this evidence, we conclude Broadus cannot show a reasonable probability that, but for the lack of investigation, the result of the proceeding would have been different.

C.    Failure to Object to Broken Door Testimony

¶ 24    Finally, Broadus argues that trial counsel unreasonably failed to object to speculative testimony suggesting that McCray's door was broken down sometime after the shooting by someone involved with the shooting to threaten or intimidate her. But no witness

testified that Broadus was involved in this event. To the contrary, McCray and Tiller both testified that they believed Webster was the perpetrator. While Broadus argues that this testimony nonetheless implied that he was a dangerous man, he does not attempt to explain how the jury could have reached that conclusion based on the testimony presented at trial. Because we conclude, again, that he has not demonstrated prejudice resulting from counsel's alleged ineffectiveness, he is not entitled to relief.

## III. Disposition

¶ 25　The order is affirmed.

JUDGE LIPINSKY and JUDGE HAWTHORNE concur.