23CA0437 Peo v Taylor 06-26-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0437
Summit County District Court No. 08CR14
Honorable W. Terry Ruckriegle, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Eric Brandon Taylor,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE LUM
Lipinsky and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 26, 2025

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Nicole M. Mooney, Alternate Defense Counsel, Golden, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Eric Brandon Taylor, appeals the postconviction court's order denying the ineffective assistance of counsel claims in his Crim. P. 35(c) motion.  We affirm.

## I.    Background

¶ 2    Taylor was working at a bar where he encountered the victim, C.S., who was out with coworkers during an employee appreciation event.  When C.S. asked Taylor for the location of the restroom, Taylor led her to a single-toilet bathroom adjoining an employee-only office.

¶ 3    When C.S. was using the bathroom, Taylor opened the door, grabbed her legs, and pulled her off the toilet.  Taylor then sexually assaulted C.S. and strangled her when she attempted to resist or call for help.  C.S. suffered abrasions on her neck, as well as bruises on her back and shoulders.  Taylor's DNA was found in C.S.'s vagina.

¶ 4    At trial, Taylor's theory of defense was that he and C.S. had engaged in consensual sex.  The jury convicted Taylor of sexual assault, unlawful sexual contact, assault in the second degree, false imprisonment, and menacing.  The trial court sentenced him to consecutive sentences of twenty-eight years to life for sexual assault

and twelve years for second degree assault (with all remaining sentences imposed concurrently) in the custody of the Department of Corrections.

¶ 5 On direct appeal, a division of this court affirmed Taylor's conviction. *People v. Taylor*, (Colo. App. No. 09CA0185, Mar. 15, 2012) (not published pursuant to C.A.R. 35(f)). Taylor then filed a Crim. P. 35(c) motion in 2013 (the postconviction motion), and the postconviction court appointed counsel for him in 2015. Five years later, Taylor's postconviction counsel filed a supplement to the postconviction motion. As relevant here, Taylor contended that his trial counsel was ineffective for failing to investigate and to ensure that Taylor was present when the jury viewed the crime scene. He also argued that his appellate counsel was ineffective for failing to raise the crime scene viewing issue on direct appeal.

¶ 6 After an evidentiary hearing, the postconviction court entered a detailed and comprehensive order concluding that Taylor had failed to demonstrate ineffective assistance of counsel because he (1) didn't demonstrate any prejudice stemming from counsel's purported lack of investigation; (2) wasn't entitled to be present at the crime scene viewing; and (3) in any event, didn't demonstrate

that his presence at the viewing would have had any effect on his ability to defend against the charges. The court declined to address Taylor's arguments relating to appellate counsel because they were conclusory.

¶ 7 On appeal, Taylor contends that evidentiary errors and other problems at the postconviction hearing violated his due process right "to a full and fair opportunity to be heard and to present admissible evidence to challenge the constitutionality of his convictions." He also argues that the postconviction court erred by denying his ineffective assistance claims for trial counsel's failures to investigate and to request Taylor's presence at the crime scene viewing, and appellate counsel's failure to raise the viewing issue on appeal.[1] We address, and reject, each contention in turn.

## II. Due Process and Evidentiary Challenges Related to the Postconviction Hearing

¶ 8 Taylor argues that the postconviction court violated his due process rights by denying him a meaningful hearing in which he

---

[1] Taylor abandoned the other claims he raised in the postconviction court because he didn't reassert them on appeal. *See People v. Brooks*, 250 P.3d 771, 772 (Colo. App. 2010).

could challenge the constitutionality of his convictions. We aren't persuaded.

## A. Background

¶ 9 Before the postconviction hearing, Taylor endorsed Elizabeth Jean Texel Turner (Texel), a lawyer, to testify as a criminal defense expert. Taylor disclosed Texel's expert report before the hearing. The report contained two main sections. The first, entitled "Work Performed by [trial counsel] on [Taylor's] behalf," generally summarized the facts of the case and the pretrial and trial proceedings, though it also contained brief statements indicating Texel's thoughts about trial counsel's performance. The second, entitled "Evaluation of work performed by [trial counsel] on behalf of [Taylor]," more thoroughly described Texel's conclusions about trial counsel's performance. We refer to these as the "background" and "conclusion" sections, respectively.

¶ 10 At the postconviction hearing, trial counsel testified first. Texel was present for that testimony. After trial counsel's testimony, the postconviction court granted the People's sequestration motion and rejected Taylor's request that Texel be

4

allowed to remain in the courtroom during Taylor's testimony. After Taylor's testimony, Texel returned to the courtroom to testify.

¶ 11    During Texel's direct examination, the People objected to questioning and testimony relating to trial counsel's failure to (1) object during the prosecutor's opening statement; (2) question prospective jurors about "the issue of [Taylor] being in custody"; and (3) conduct a more thorough cross-examination of the prosecution's sexual assault expert. The People argued they hadn't been provided with notice that Texel would testify about these topics. The court sustained each objection.[2] The People also objected to questions and testimony that didn't relate to issues raised in the postconviction motion. The court sustained those objections, too.

¶ 12    Also, during Texel's testimony, the postconviction court (1) admonished Texel for continuing to testify while an objection was pending; (2) said it was "flabbergasted" by postconviction counsel's argument regarding why an expert's testimony could

[2] The postconviction court overruled a similar objection to Texel's testimony about trial counsel's cross-examination of C.S. after postconviction counsel directed the court to the page in Texel's report containing her opinion on that issue.

5

exceed the scope of her report; and (3) interrupted the prosecutor's cross-examination, saying that the interactions between the prosecutor and Texel were "at least inappropriate" and were "getting out of control."

## B.    Due Process

¶ 13    "Procedural due process involves the manner in which state action occurs and requires notice and a fair opportunity to be heard." *People v. Oglethorpe*, 87 P.3d 129, 133 (Colo. App. 2003); *see also* U.S. Const. amend. V; Colo. Const. art. II, § 25.

¶ 14    As best we can discern, Taylor argues that the postconviction court deprived him of a fair opportunity to be heard by (1) erroneously excluding some of Texel's testimony; (2) making comments that Taylor characterizes as "dismissive," "short-tempered," or overly critical; and (3) not permitting Texel to be present in the courtroom during Taylor's testimony.

¶ 15    We decline to address Taylor's due process challenge because it isn't preserved. *See People v. Huggins*, 2019 COA 116, ¶¶ 17-18 ("When a defendant does not raise an issue in a postconviction motion or during the hearing on that motion . . . the issue is not properly preserved for appeal and we will not consider it."). Though

6

Taylor preserved his individual evidentiary and sequestration arguments, he didn't raise a collective due process challenge — and he didn't assert *any* error regarding the court's comments to witnesses and counsel — during the hearing, after the hearing, or in his proposed findings of fact and conclusions of law.

### C. Exclusion of Testimony and Sequestration Order

¶ 16 To the extent Taylor challenges the postconviction court's evidentiary rulings and sequestration order individually, we reject them.

¶ 17 We first address the postconviction court's exclusion of Texel's testimony about opening statements, custody, and cross-examination of the sexual assault expert based on lack of notice to the People. Taylor contends that the court abused its discretion because (1) it applied the wrong law concerning what disclosures are due to the People in advance of a postconviction hearing and (2) the People had notice of Texel's conclusions because they were contained in the "background" section of her report. We perceive no basis for reversal.

¶ 18 Taylor doesn't explain the substance of Texel's excluded testimony, identify the postconviction claim to which such

testimony purportedly related, provide any record citation to support his assertion that the excluded testimony was disclosed in the "background" section of Texel's report, or explain how the excluded testimony would have affected the outcome of the proceeding. Thus, even if we assume that the court erred by excluding the evidence, we can't conclude that Taylor was prejudiced by the error. *Cf. People v. Faussett,* 2016 COA 94M, ¶ 17 ("[W]here counsel makes no offer of proof as to what the witness's testimony would have been, the reviewing court will not consider the alleged error to be prejudicial if it cannot determine from the record how the exclusion of evidence harmed the defendant's case." (citing *People in Interest of N.F.,* 820 P.2d 1128, 1133 (Colo. App. 1991))); *People v. Casias*, 2012 COA 117, ¶ 61 ("Where there is not a reasonable probability that such an error contributed to a defendant's conviction, the error will be disregarded as harmless."); *People v. Graybeal,* 155 P.3d 614, 620 (Colo. App. 2007) ("This court 'will not search through briefs to discover what errors are relied on, and then search through the record for supporting evidence.'" (quoting *Mauldin v. Lowery*, 255 P.2d 976, 977 (Colo. 1953))).

¶ 19    To the extent Taylor contends that the postconviction court erred by (1) precluding testimony pertaining to topics that weren't raised in the postconviction motion and (2) sequestering Texel, we decline to address those arguments as undeveloped.  *See* C.A.R. 28(a)(5), (a)(7)(B); *People v. Cuellar*, 2023 COA 20, ¶ 44.

### III.    Ineffective Assistance Claims

#### A.    Standard of Review and Applicable Law

¶ 20    "In reviewing a Crim. P. 35(c) claim, we presume the validity of the conviction[,] and the defendant bears the burden of proving his claims by a preponderance of the evidence."  *Dunlap v. People*, 173 P.3d 1054, 1061 (Colo. 2007).  We defer to the postconviction court's factual findings if they are supported by the record, but we review de novo the court's ultimate legal conclusions.  *Id.* at 1063.

¶ 21    The United States and Colorado Constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16.  A defendant may seek postconviction relief for ineffective assistance of counsel under Crim. P. 35(c).  *See Dunlap*, 173 P.3d at 1062; *see also Strickland v. Washington*, 466 U.S. 668, 684-86 (1984).  A successful claim for ineffective assistance of counsel requires proof

9

by a preponderance of the evidence that (1) counsel performed deficiently and (2) the deficient performance prejudiced the defendant. *People v. Chalchi-Sevilla*, 2019 COA 75, ¶ 6 (citing *Strickland*, 466 U.S. at 687). "[I]f a court determines that a defendant failed to affirmatively demonstrate prejudice, it may resolve the claim on that basis alone." *People v. Garner*, 2015 COA 174, ¶ 17.

¶ 22     To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Dunlap*, 173 P.3d at 1063 (quoting *Strickland*, 466 U.S. at 694).

### B.     Failure to Investigate

¶ 23     Taylor contends that the postconviction court erred by rejecting his claim that trial counsel was ineffective for failure to investigate. We disagree.

¶ 24     The postconviction court ruled that Taylor failed to show any prejudice stemming from trial counsel's alleged failure to investigate because he didn't identify how a further investigation would have

affected the outcome of his case. Taylor doesn't directly contest this ruling. Instead, he contends that prejudice must be presumed because trial counsel's "wholly deficient" investigation left counsel uninformed and unable to subject the prosecution's case to meaningful adversarial testing. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) ("[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.").

¶ 25    We need not address Taylor's contention because he didn't raise the presumed prejudice argument in the postconviction court. *See Huggins*, ¶ 17 (holding that the court will not consider an issue that wasn't raised "in a postconviction motion or during the hearing on that motion").

¶ 26    But even if we did, and even if the record established that trial counsel's performance was deficient, trial counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing. Trial counsel (1) conducted some investigation and (2) challenged the prosecution's case at pretrial hearings and at trial. *See Bell v. Cone*, 535 U.S. 685, 695-98 (2002) (because

11

counsel's failure to oppose the prosecution's case "must be complete" for a presumption of prejudice to apply, no presumption arose for counsel's failure to oppose the prosecution "at specific points" rather than throughout the "proceeding as a whole"); *see also A.R. v. D.R.*, 2020 CO 10, ¶ 66 ("[P]resumption of prejudice applies only in relatively narrow circumstances . . . .").

## C.   Crime Scene Viewing

¶ 27    Taylor next contends that the postconviction court erred by denying his claim that trial counsel was ineffective for failing to secure Taylor's presence at the jury's viewing of the crime scene. He also reasserts his argument that appellate counsel was ineffective for failing to raise this issue.  We again disagree.

### 1.   Right to Be Present

¶ 28    The United States and Colorado Constitutions "guarantee the right of a criminal defendant to be present at all critical stages of the prosecution." *Zoll v. People*, 2018 CO 70, ¶ 19 (quoting *People v. White*, 870 P.2d 424, 458 (Colo. 1994)).  "A critical stage of criminal proceedings is one where there exists more than a minimal risk that the absence of the defendant might impair his or her right to a fair trial." *People v. Cardenas*, 2015 COA 94M, ¶ 22.  However,

12

"the right to be present is not constitutionally guaranteed when the defendant's presence would be useless or when the benefit of the defendant's presence would be 'but a shadow.'" *Zoll*, ¶ 20 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).

### 2. Analysis

¶ 29 Taylor contends that trial counsel was ineffective for failing to secure his presence because his absence from the jury viewing prevented him from presenting a full defense.

¶ 30 The record reflects that the trial court granted the prosecution's request for the jury to view the crime scene over the objection of Taylor's trial counsel. At the viewing, the court instructed the jurors "not to ask any questions or discuss the case among [themselves] or with anyone else" and said that "no one other than the bailiff is to speak to [the jury]." The trial court didn't permit any questions or other communications. Rather, it merely allowed a detective to point to various parts of the bar and say, "[T]his is the stairs, this is the office, this is the room." Trial counsel and the prosecutors attended the viewing, but only to observe.

¶ 31     The postconviction court ruled that trial counsel had not

rendered ineffective assistance because (1) counsel objected to the

jury viewing the crime scene; and (2) the viewing wasn't a critical

stage of the proceeding because Taylor's presence would have been,

at most, minimally beneficial to his defense.  The court also noted

that Taylor didn't demonstrate how his absence affected the

outcome of the trial.

¶ 32     We need not address whether the viewing was a critical stage

of the proceeding because we agree with the postconviction court

that Taylor "failed to make any showing that . . . his exclusion from

the view[ing] denied him . . . a fair and just proceeding or thwarted

his opportunity to defend against the charges he faced."  *See Hagos

v. People*, 2012 CO 63, ¶ 13 ("[Ineffective assistance of counsel]

claims 'by their nature require a showing of prejudice with respect

to the trial as a whole.'" (quoting *Delaware v. Van Arsdall*, 475 U.S.

673, 680 (1986))).  While Taylor argues that his presence was

"necessary to ensure that there were no disparities at the scene

view that could have negatively impacted the outcome of the trial,"

he doesn't identify any alleged disparities or explain how they could

have affected the verdict.  (As the postconviction court noted, the

trial outcome largely depended on the jury's assessment of C.S.'s credibility.) Furthermore, photos of the crime scene taken just after the assault were admitted into evidence and published to the jury shortly before the viewing, so the jurors would have identified any discrepancies for themselves.[3]

¶ 33 Lastly, we reject Taylor's contention of ineffective assistance of appellate counsel. The postconviction court found, with record support, that Taylor raised only conclusory assertions of appellate counsel's alleged ineffective assistance. Taylor doesn't directly contest this ruling; he simply reraises his arguments with slightly more detail. Accordingly, the postconviction court didn't err by declining to address Taylor's claims relating to appellate counsel. *See People v. Zuniga*, 80 P.3d 965, 973 (Colo. App. 2003) (conclusory assertions are insufficient to substantiate ineffective assistance claims).

## IV. Disposition

¶ 34 We affirm the postconviction court's order.

---

[3] During his postconviction hearing testimony, trial counsel confirmed that the jury viewed the correct location. Moreover, trial counsel did not testify that he observed any discrepancies between the crime scene photos and the scene at the time of the viewing.

JUDGE LIPINSKY and JUDGE TAUBMAN concur.